UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| YITZCHAK SIMON, | ) |
| | ) |
|    PLAINTIFF, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-00955 |
| | ) |
| TISHAURA JONES, et al., | ) |
| | ) |
|    DEFENDANTS. | ) |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Tishaura Jones and Yusef Scoggin (collectively, "Defendants"), in their individual and official capacities, and, for their reply in support of their Motion for Summary Judgment, state as follows:

### ARGUMENT ON REPLY

**1. Defendants remain entitled to qualified immunity on Plaintiff's § 1983 claims.**

    **a. First Amendment (Count I)**

Plaintiff did not participate in protected activity at the Riverfront that was clearly established. It bears repeating that, according to Plaintiff, he arrived at the Encampment and "asked [a City worker] what was going on. [He] probably spoke with the two homeless outreach police officers, and [] spoke to a few unhoused people, just saying, 'Hello,' and asking them what led – what happened." (UMF #39; Doc. 61, p. 17 (admitted by Plaintiff)). Otherwise, he remembers that he did "a lot of standing around…that's pretty much it." (UMF #40; Doc. 61, p. 18 (admitted by Plaintiff)). At no point, according to him, did he ever criticize City's homeless policy at the Riverfront, testify against any city official, or participate in any activity at the Riverfront recognized as clearly established activity under the First Amendment. Plaintiff's response does

1

nothing to change these undisputed facts. *C.f. Helvey v. City of Maplewood*, 154 F.3d 841, 844 (8th Cir. 1998) (denying city officials qualified immunity where it was alleged they retaliated against the plaintiff for testifying against city police officers); *Pendleton v. St. Louis Cnty.*, 178 F.3d 1007, 1009 (8th Cir. 1999) (denying city officials qualified immunity where the plaintiffs sent a fax to local media criticizing local officials).

Plaintiff's reliance on *Walker* is misplaced. In *Walker v. City of Pine Bluff*, while analyzing the plaintiff's actions under the Fourth Amendment, the Court found that qualified immunity was unavailable to the defendants because the "officers lacked arguable probable cause to arrest … [him] in this situation." *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005). *Walker* is not relevant to the First Amendment discussion here because *Walker* "never mentions, much less discusses, the First Amendment." *Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 339 (8th Cir. 2023). And, as the Eighth Circuit noted, "neither of these Fourth Amendment cases [whether *Walker* or *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020)] can clearly establish a *First Amendment* right to observe police officers." *Id.* at 340; s*ee Colten v. Kentucky*, 407 U.S. 104, 109 (1953). Even if *Walker*'s Fourth Amendment discussion could establish a First Amendment right to observe police officers, here, Plaintiff was not observing police officers; he was merely doing "a lot of standing around." Standing around, without more, is not an activity warranting First Amendment protection.[1] Because Plaintiff has failed to show that he engaged in protected activity, his First Amendment claim fails and Defendants are entitled to qualified immunity.

---

[1] In his First Amendment analysis, Plaintiff argues that "the right to be free from government interference with an employment relation [is] clearly established," and in support thereof cites to *Chernin v. Lyng*, 874 F.2d 501 (8th Cir. 1989). (Doc. 62, p. 6). Importantly, however, such a right does not exist under the First Amendment. *Chernin* analyzes the right under the Fifth Amendment. *Id.* There are no cases cited by Plaintiff, or otherwise, that hold that the right to be free from government interference with an employment relation exists under the First Amendment.

2

Notably, the testimony of Defendants and other City officials regarding their understanding of the First Amendment, and what activities fall within its purview, is irrelevant to the qualified immunity analysis. The doctrine of qualified immunity shields government officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which *a reasonable person* would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). This is an objective standard, not a subjective one. *Id.* at 819 ("defining the limits of qualified immunity essentially in objective terms"). Therefore, any opinions by Defendants or other City employees regarding the First Amendment, their understanding of it, and what activity is protected under the First Amendment, is of no use to the qualified immunity analysis because it is indicative of merely subjective opinions, and does not meet the objective standard that qualified immunity requires.

In his response, and in his additional facts, Plaintiff fancies himself a well-known homeless advocate who is critical of the Mayor's unhoused policies, implying thereby that, because of his self-proclaimed notoriety, Defendants had some kind of retaliatory animus toward him. If Plaintiff's argument were carried to its logical conclusion, any adverse action taken against a well-known political activist would be *ipso facto* First Amendment retaliation, and that is not the law. *See Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) (affirming qualified immunity for officers who arrested well-known civil rights activist for disrupting School Board meeting because the plaintiff provided no evidence the officers' actions were motivated by retaliatory animus of the plaintiff's First Amendment activity). In any event, it is undisputed that Jones does not know Plaintiff, and would not recognize him if she saw a picture of him. (UMF #6; Doc. 61, p. 2 (admitted in part by Plaintiff)). And there is no evidence that Scoggin knew of Plaintiff's political opinions on any issue, much less Plaintiff's specific opinions regarding the Mayor's unhoused

3

policies. Thus, even if retaliatory animus could be attributed to Defendants because of Plaintiff's self-proclaimed notoriety as a homeless advocate, he was unknown to Defendants as such.

### b. Conspiracy Claim (Count II)

Plaintiff's response supports Defendants' argument that they are entitled to qualified immunity in Count II. Twice in Plaintiff's response, he concedes that "the Eighth Circuit has never definitely addressed the issue whether the [intracorporate conspiracy] doctrine applies to § 1983 conspiracy claims." (Doc. 62, p. 8-9). It is upon this very basis that the Court in *Street* awarded officers qualified immunity on the plaintiffs' conspiracy claims, and so should this Court. *St. v. Leyshock*, 41 F.4th 987, 990 (8th Cir. 2022), citing *L.L. Nelson Enters. v. County of St. Louis*, 673 F.3d 799 (8th Cir. 2012); *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739 (8th Cir. 2022).

### c. Fifth and Fourteenth Amendment (Count III)

Plaintiff has not produced any admissible evidence that Mayor Jones threatened to withhold public funding from St. Patrick Center (SPC) if SPC did not terminate Plaintiff, and therefore, Plaintiff has failed to show that Defendants violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments. For support of his position that Jones threatened public funding if SPC did not terminate Plaintiff, Plaintiff points to two things- 1) Goossens' testimony that D'Agostino told her that the Mayor "was threatening funding" if SPC didn't "get [Plaintiff] off the riverfront because Yitzy is causing issues;" and 2) the termination letter from SPC to Simon. Because neither disputes a material fact, Plaintiff's due process claim must fail.

The law is well settled in this circuit and elsewhere that a party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment. *See Hanke v. Global Van Lines, Inc.*, 533 F.2d 396, 398 (8th Cir.1976) (holding that defendant's attorney's affidavit which appeared to be based on hearsay was entitled to no consideration); *Pink Supply Corp. v. Hiebert, Inc.*, 788

4

F.2d 1313, 1319 (8th Cir.1986) (declaring that "[w]ithout a showing that admissible evidence will be available at trial, a party may not rely on inadmissible hearsay" when opposing a motion for summary judgment); *Financial Timing Publications, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir.1990) (pointing out that a party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment); *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1267 (9th Cir.) (holding that deposition testimony concerning statement of defendant's agent constituted inadmissible hearsay), cert. dismissed, 464 U.S. 956, 104 S.Ct. 385, 78 L.Ed.2d 331 (1983); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985) (concluding that plaintiff could not rely on inadmissible hearsay in opposing defendant's motion for summary judgment); *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir.) (holding that hearsay evidence cannot be considered on a motion for summary judgment), cert. denied, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969).

Goossens testimony that D'Agostino told her that the Mayor "was threatening funding" if SPC didn't "get [Plaintiff] off the riverfront" is hearsay within hearsay. The statements that the Mayor allegedly told D'Agostino are out of court statements being offered by Plaintiff for the truth of the matter asserted that the Mayor was "threatening funding," and D'Agostino's statements to Goossens about what the Mayor told him are also out of court statements being offered for the truth of the matter asserted that D'Agostino told Goossens what the Mayor said. Neither of these statements fall within a hearsay exception, and thus, are inadmissible and should not be considered in response to Defendants' motion for summary judgment.

Moreover, even if the Court believes such statements fall under a hearsay exception, such statements do not support Plaintiff's position that the Mayor threatened Plaintiff's employment. Instead, Goossens' testimony shows that the Mayor threatened to withhold public funding from

5

SPC if Plaintiff did not leave the Riverfront. That is a far cry from what Plaintiff asserts in this lawsuit – namely, that the Mayor called D'Agostino and threatened to withhold public funds from SPC if they did not terminate Plaintiff. Therefore, when viewing the facts in the light most favorable to Plaintiff, at most, the Mayor threatened to withhold public funds from SPC if SPC did not make Plaintiff leave the Riverfront. Plaintiff does not, nor will he be able to, show that he had a property interest in remaining at the Riverfront. This is especially true where Plaintiff alleges he was not working for SPC on the day in question. (Doc. 61, p. 37, ¶ 123).

Similarly, the termination letter is not evidence that the Mayor threatened to withhold public funds from SPC if SPC did not fire Plaintiff. The termination letter was produced to the parties by SPC as part of Plaintiff's employment file. It is unknown who wrote the termination letter and where the information in the letter came from. (See Ex. G, D'Agostino Dep., at 94; Ex. H, Poole Dep., at 53). The letter reads that Plaintiff's "actions on March 24th, 2023 resulted in the threat of Saint Patrick Center losing funding and created conflict with our funders and supporters and is the primary reason for termination." (Ex. B, ST. PATRICK_011). Plaintiff interprets this to mean that the Mayor told D'Agostino that she would withhold public funds from SPC if SPC did not terminate Plaintiff, but such is merely speculation. *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (In order to withstand the motion for summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."). Moreover, while the letter says that Plaintiff's actions on March 24th are the *primary* reason for the termination, it did not say it was the only, or exclusive, reason for the termination. In fact, during discovery, we learned that SPC management considered Plaintiff's entire work history, including several other incidents

of unprofessional and disruptive behavior, in coming to their decision to terminate Plaintiff. (UMF #10-14).

Even if the Mayor did threaten to withhold public funding from SPC, the Mayor does not have unilateral authority to withhold or disperse public funds, and St. Patrick Center's CEO, to whom this threat was allegedly made, knows that. As described by Defendants in their initial memo in support of summary judgment, Jones does not have unilateral, unreviewable control over the distribution of public funds. (UMF #22-26). And SPC's CEO, D'Agostino, knows this. (Ex. G, D'Agostino, p. 109) (explaining that the Department of Human Services grants are not unilaterally dispersed by the Mayor). This is unlike in the examples Plaintiff provides where city officials had unilateral and unreviewable control to do the things they threatened. *See e.g.*, *Chernin v. Lyng*, 874 F.2d 501, 509 (8th Cir. 1989) (where a government agency required a private employer over whom it had regulatory authority to fire an employee against the employer's own judgment or will); *Helvey v. City of Maplewood*, 154 F.3d 841, 843 (8th Cir. 1998) (where the City Manager threatened to shut down a bar and revoke its liquor license if the bar owner did not fire one of its employees who testified against the city's police); *Waddell v. Forney*, 108 F.3d 889, 893 (8th Cir. 1997) (where the defendants required First Family to fire *Waddell* immediately or lose the insurance on its deposit funds).

Because Plaintiff cannot, and did not, show that Defendants violated his due process rights, Defendants are entitled to qualified immunity.

2. **Defendant City, or Defendants in their official capacities, are entitled to judgment as a matter of law on Plaintiff's § 1983 claims.**

Plaintiff did not respond or provide any admissible evidence which would support his claims against City under the First or Fifth/Fourteenth Amendments. And indeed, he cannot

7

provide such evidence because it does not exist. As such, judgment should be entered for City, and against Plaintiff, on Counts I & III.

As to the conspiracy claim (Count II), Plaintiff asserts that the Eighth Circuit "has never definitely addressed the issue whether the [intracoporate conspiracy] doctrine applies to § 1983 conspiracy claims," and while true, the Eighth Circuit has extended the doctrine to § 1985 claims. *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 905 (E.D. Mo 2017). And Sections 1983 and 1985 are close analogues that both trace their origins to the Civil Rights Act of 1871. *Griffin v. Breckenridge*, 403 U.S. 88, 98-99 (1971). As Plaintiff rightly points out, other circuits have extended the intracorporate conspiracy doctrine to § 1983 claims. *See Jackson v. City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019); *Grider v. City of Auburn, Ala*, 618 F.3d 1240, 1261-62 (11th Cir. 2010); *see also, Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 915 (E.D. Mo. 2020), *aff'd sub nom. Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022). There is no reason, and Plaintiff provides the Court with no reason, why the Court should not similarly hold here.

   3. **Defendants remain entitled to official immunity on Plaintiff's state law claim.**

Plaintiff alleges that Defendants are not entitled to official immunity where their actions were malicious. In support of this argument, Plaintiff offers only unsubstantiated allegations from the Amended Complaint. Yet, it is well-established that an unverified complaint cannot be considered in response to a well-supported motion for summary judgment. *Tweeton v. Frandrup*, 287 Fed. Appx. 541 (8th Cir. 2008) (held that unverified complaint could not serve as a response countering defendants' supporting evidence, so as to raise genuine issue of fact and avoid summary judgment.). Therefore, Plaintiff provides this Court with no support for his contention that Defendants' actions were malicious, and they are therefore entitled to official immunity.

   4. **Plaintiff has failed to show evidence of damages to warrant recovery under any legal claim.**

8

Finally, for all claims alleged against Defendants, Plaintiff has failed to put on evidence of damages. Plaintiff provides this Court with no information regarding how much money, if any, Plaintiff forfeited as a result of his termination with SPC, or whether and when he was able to find gainful employment thereafter. Moreover, while Plaintiff asserts that "[i]n some cases, embarrassment, humiliation, and emotional distress may be sufficient to support a § 1983 claim," he does not show why this is such a case. Plaintiff has provided no support that he was embarrassed, humiliated or emotionally distressed because of Defendants' actions. Without a scintilla of evidence regarding damages, judgment must be entered for Defendants.

## CONCLUSION

In conclusion, Plaintiff's claims against Defendants fail as a matter of law, and Plaintiff cannot, and will not be able to, establish facts supporting any claim against Defendants, and so, judgment should be entered for Defendants, and against Plaintiff.

Respectfully submitted,

SHEENA HAMILTON
CITY COUNSELOR

By: /s/ Abby Duncan
Abby Duncan, 67766(MO)
Associate City Counselor
Morgan Henry, 87339 (MI)
Assistant City Counselor
1200 Market Street
City Hall Room 314
St. Louis, Missouri  63103
Phone: (314) 622-4694
DuncanA@stlouis-mo.gov
HenryM@stlouis-mo.gov

*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify the foregoing was electronically filed on March 24, 2025 with the Court for service by means of Notice of Electronic Filing upon all attorneys of record.

                                                                  /s/ Abby Duncan